Matthew J. Pero (State Bar No. 130746)
  mpero@lagerlof.com
Michael Rapkine (State Bar No. 222811)
  mrapkine@lagerlof.com
LAGERLOF, LLP
155 North Lake Avenue, 11th Floor
Pasadena, California 91101
Telephone: (626) 793-9400
Facsimile: (626) 793-5900

Attorneys for Plaintiff
I.C.A.R.E. DOG RESCUE,
a California Nonprofit Public Benefit Corporation

IN THE UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Bankruptcy Case No. 8:23-bk-11709-SC |
|---|---|
| **DANIEL SAM BRAVO and CORRIE JENNIFER BRAVO** | Chapter 7 |
| | Adversary No.: |
| Debtors. | |
| | **Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6)** |
| I.C.A.R.E. DOG RESCUE, a California Nonprofit Public Benefit Corporation, | |
| Plaintiff, | |
| v. | |
| DANIEL BRAVO, an individual; and CORRIE BRAVO, an individual, | |
| Defendants. | |

1       I.C.A.R.E. DOG RESCUE, a California Nonprofit Public Benefit
2   Corporation ("Plaintiff" and "ICARE"), a creditor and party in interest in the
3   above-entitled bankruptcy case, files this Complaint to Determine Non-
4   Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6), on the
5   grounds set forth herein and alleges as follow:

6       1.    This adversary proceeding is a core proceeding.  Plaintiff consents to
7   entry of final orders or judgment by the bankruptcy judge in this case.

8   **JURISDICTION AND VENUE**

9       2.    This Court has subject matter jurisdiction over this adversary case in
10  bankruptcy pursuant to 28 U.S.C. §§ 1334(a), 157(b)(1), and 11 U.S.C. § 523,
11  because this is a core proceeding to determine the dischargeability of a particular
12  scheduled debt of Defendants.

13      3.    This adversary proceeding constitutes a core proceeding under 28
14  U.S.C. §§ 157(b)(2)(A), (I) and (O).

15      4.    Venue properly lies in this District pursuant to 28 U.S.C. §§ 1408 and
16  1409(a).

17  **PARTIES**

18      5.    Plaintiff is a creditor of Debtors, having sustained a loss of not less
19  than $285,335.38 as a result of Debtors' fraudulent scheme described herein.
20  Plaintiff is scheduled in Debtors' initial bankruptcy petition as an unliquidated,
21  disputed, non-priority, unsecured creditor.

22      6.    Defendants Daniel Sam Bravo and Corrie Jennifer Bravo
23  ("Defendants", the "Bravos", and "Debtors") filed a Voluntary Petition for Relief
24  under chapter 7 of title 11 of the United States Code in this court on August 24,
25  2023.

26      7.    Defendant Daniel Sam Bravo is the former chair of ICARE's Board of
27  Directors.  Daniel Sam Bravo also held various officer roles during his tenure at
28  ICARE.

8.    Defendant Corrie Jennifer Bravo is the former vice-chair of ICARE's Board of Directors and is also the former Corporate Secretary of ICARE.

**FACTUAL ALLEGATIONS**

9.    ICARE is the plaintiff in the action entitled <u>I.C.A.R.E. Dog Rescue v. Daniel Bravo, et al.</u>, Orange County Superior Court Case No. 30-2023-01328472-CU-FR-CJC (the "State Court Action").  The complaint in the State Court Action was filed on May 31, 2023.  Debtors' Chapter 7 Petition was filed on August 24, 2023, resulting in a stay of the State Court Action.  A genuine copy of Plaintiff's original Complaint in said state court action is attached hereto as Exhibit "1" and is incorporated herein by this reference.

10.    In the State Court Action, Plaintiff asserts claims against Defendants for breach of fiduciary duty, fraudulent concealment, unjust enrichment, money had and received, violation of Penal Code section 496, and accounting.

11.    As alleged in the State Court Action, in February 2022, ICARE discovered that Defendants had failed to adhere to recordkeeping and reporting formalities with regard to the financial records of ICARE.  When confronted with this information, Defendants immediately resigned from their ICARE positions.

12.    Thereafter, ICARE retained a forensic accountant / certified fraud examiner as a consultant to analyze all available financial information, to ascertain what documents were still missing, and to perform a forensic analysis of ICARE's books and records.

13.    From that analysis, which was limited by ICARE's inability to obtain numerous receipts and other requested documents, ICARE learned the following:

a.    The Bravos used the ICARE debit cards to pay for what appears to be their personal expenses such as jewelry, online music downloads, online video games, hotel bookings, supermarket purchases, countless restaurant meals, as well as unexplained and undocumented purchases from vendors such as Amazon, Costco, Circle K, and additional retailers.  Many debit card

ADVERSARY COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

charges were not recorded in ICARE's general ledger.  Other charges in the general ledger were modified or deleted by defendants using ICARE's desktop version of QuickBooks.

b.    The Bravos frequently withdrew cash from ATMs using the ICARE debit cards linked to a deposit account at U.S. Bank. However, the Bravos failed to identify the ICARE expenses that were paid through these cash withdrawals, and they failed to record most of these debits in ICARE's general ledger.

14.    Plaintiff is still in the process of gathering information and documents that Defendants have continued to withhold so that it can quantify the total amount of ICARE funds that Defendants misappropriated.  On information and belief, Plaintiff alleges that at a minimum, the Bravos have misappropriated not less than $285,335.38 in ICARE funds to pay for what appears to be their personal expenses from March 2015 through February 2022.

15.    Of the $285,335.38 in funds that appear to have been misappropriated, the following table describes the top five categories of questionable transactions during the period between March 2015 through February 2022:

| Category | Number of Transactions | Amount |
|---|---|---|
| Food & beverages | 511 | $37,5471.73 |
| Convenience store / Gas station | 788 | $35,272.08 |
| Cash withdrawals | 146 | $32,209.37 |
| Cell phone charges | 94 | $20,700.57 |
| Members stores | 91 | $18,453.54 |

16.    To date, Plaintiff has only been able to obtain ICARE bank statements at U.S. Bank going back to March 2015.  The alleged amount misappropriated by defendants could easily exceed $285,335.38 once bank statements prior to March

1   2015 are obtained.

2       17.    On September 20, 2022, Plaintiff sent the Bravos a demand that they

3   produce various supporting documentation, including receipts, so that plaintiff

4   could evaluate the legitimacy of the questionable transactions listed in the above

5   table.  To date, Defendants have refused to produce any supporting documentation

6   (including receipts) for ICARE's review.

7       18.    As ICARE Board members and officers, the Bravos were entrusted

8   with ICARE's money, bank records, accounting records, and other financial

9   documents.  Defendants held ICARE's money in trust -- to be used strictly for

10  ICARE business expenses -- and thus there was a fiduciary relationship between

11  ICARE and Defendants that included an obligation to safeguard and protect

12  ICARE's property.  The fiduciary duty owed by the Bravos obligated them to place

13  ICARE's interests ahead of their own.  The fiduciary duty owed by the Bravos also

14  tolls all applicable statute of limitations periods in this action.

15      19.    Defendants breached their fiduciary duties by diverting ICARE funds

16  to pay for their personal expenses.

17      20.    Defendants were not acting under any grant of authority or consent

18  when they diverted ICARE funds to pay for their personal expenses.

19      21.    Plaintiff's damages are not less than $285,335.38 from March 2015

20  through February 2022, subject to proof at trial.

21      22.    Any person who knowingly receives property obtained by theft

22  violates California Penal Code Section 496(a).  Pursuant to Section 496(c), a party

23  injured due to a violation of Section 496(a) may bring a civil action against the

24  person(s) that violated this statute, seeking recovery of treble damages, costs of

25  suit, and attorneys' fees.

26      23.    Defendants Daniel Bravo and Corrie Bravo wrongfully obtained

27  property from Plaintiff through frequent debit card charges and ATM withdrawals.

28  With respect to the debit card purchases, the Bravos wrongfully received and

ADVERSARY COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT
4867-8347-7396, V. 1

1   retained personal property through each of these charges.  Rather than using the

2   debit cards for ICARE-related business, the charges were made to benefit the

3   Bravo marital estate. The Bravos knew that they had no right to receive and retain

4   this stolen property using ICARE funds.

5       24.    As for the frequent ATM withdrawals by the Bravos using the ICARE

6   debit cards, each transaction likewise constituted a separate act of receiving

7   property through theft. Defendants knew the ICARE funds were intended solely

8   for ICARE expenses rather than for their personal use.  Despite this fact, the

9   Bravos took the wrongfully obtained money and commingled these funds into their

10   joint personal bank accounts.

11       25.    In the State Court Action, Plaintiff seeks a judgment against

12   Defendants for treble damages of no less than $856,006.14, for the funds

13   misappropriated between March 2015 and February 2022.  This figure is subject to

14   revision based on items uncovered in discovery and subject to proof at trial.

15       26.    Pursuant to Penal Code section 496(c), Plaintiff is also entitled to its

16   attorneys' fees and costs.

17       27.    Plaintiff brings this adversary proceeding for the purpose, *inter alia*,

18   of determining that Defendants' debt to Plaintiff arises from fraud, embezzlement,

19   for fraud or defalcation while acting in a fiduciary capacity, and intentional

20   wrongdoing that makes the debt non-dischargeable under 11 U.S.C. §§

21   523(a)(2)(A), 523(a)(4), and 523(a)(6).

22   **FIRST CLAIM FOR RELIEF**

23   **(NON-DISCHARGEABILITY OF DEBT -11 U.S.C. § 523(a)(2)(A))**

24   **(Against All Defendants)**

25       28.    Paragraphs 1 through 27 are realleged and incorporated by reference

26   as though set forth in full.

27       29.    Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge under Section 727

28   does not discharge a debtor from any debt for money obtained by false pretenses, a

false representation, or actual fraud.

30.    The money and property obtained by Defendants was obtained by false pretenses, misrepresentations, including omissions of material facts in failing to report to Plaintiff the expenses Defendants paid for their own purposes, and actual fraud.

31.    As a direct and proximate result of Defendants' fraudulent misrepresentations, omissions, and actual fraud, Defendants obtained, stole, diverted, misappropriated, embezzled, converted, and concealed no less than $285,335.38 belonging and payable to Plaintiff.

32.    As set forth above, Defendants obtained money and other property from Plaintiff by false pretenses, false representations, omissions of material fact, and actual fraud, which were committed both orally and in writing. Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(A), Defendants are not entitled to a discharge of Plaintiff's claim against them in the amount of no less than $285,335.38, trebled to an amount of no less than $856,006.14, pursuant to California Penal Code Section 496, plus costs of suit, attorney fees, and interest.

33.    Plaintiff is informed and thereupon alleges that, by obtaining, stealing, diverting, misappropriating, embezzling, converting and concealing $285,335.38, and by taking the other actions herein alleged, Defendants acted intentionally, fraudulently, maliciously, and/or in conscious and deliberate disregard of Plaintiff's rights, and otherwise in a sufficiently malevolent or despicable manner to warrant the imposition of punitive or exemplary damages. The debt owed by Defendants to Plaintiff is nondischargeable pursuant to 11 U.S.C. §523(a)(2) of the Bankruptcy Code, and as such, Plaintiff is entitled to punitive damages.

## <u>SECOND CLAIM FOR RELIEF</u>

### (NON-DISCHARGEABILITY OF DEBT -11 U.S.C. § 523(a)(4))

### (Against All Defendants)

34.    Paragraphs 1 through 33 are realleged and incorporated by reference

1    as though set forth in full.

2        35.    Pursuant to 11 U.S.C. § 523(a)(4), a discharge under Section 727 does

3    not discharge a debtor from any debt for fraud or defalcation while acting in a

4    fiduciary capacity, embezzlement, or larceny.

5        36.    As set forth more fully above, Defendants have willfully, wrongfully,

6    intentionally, and fraudulently taken at least $285,335.38 belonging and payable to

7    Plaintiff while acting in a fiduciary capacity on behalf of Plaintiff, without

8    Plaintiff's consent, and have further committed embezzlement and larceny, for the

9    use of Defendants.

10        37.    Accordingly, pursuant to 11 U.S.C. § 523(a)(4), Defendants are not

11    entitled to a discharge of Plaintiff's claim against Defendants in the amount of no

12    less than $285,335.38, trebled to an amount no less than $856,006.14 pursuant to

13    California Penal Code section 496, plus costs of suit, attorney fees, interest, and

14    punitive damages.

15    **THIRD CLAIM FOR RELIEF**

16    **(NON-DISCHARGEABILITY OF DEBT -11 U.S.C. § 523(a)(6))**

17    **(Against All Defendants)**

18        38.    Paragraphs 1 through 37 are realleged and incorporated by reference

19    as though set forth in full.

20        39.    Pursuant to 11 U.S.C. § 523(a)(6), a discharge under Section 727 does

21    not discharge a debtor from any debt for willful and malicious injury by the debtor

22    to another entity or to the property of another entity.

23        40.    As set forth more fully above, Defendants have willfully and

24    maliciously injured Plaintiff and its property by obtaining, stealing, diverting,

25    misappropriating, embezzling, converting, and concealing no less than

26    $285,335.38 belonging to Plaintiff, without Plaintiff's consent, for the use of

27    Defendants, and then failing and refusing to explain what happened to the money.

28        41.    The acts and omissions of Defendants were done with a conscious

1    disregard for Plaintiff's rights and with a specific intent to defraud and injure

2    Plaintiff.

3        42.    Accordingly, pursuant to 11 U.S.C. § 523(a)(6), Defendants are not

4    entitled to a discharge of Plaintiff's claims against Defendants in an amount no less

5    than $285,335.38, trebled to an amount no less than $856,006.14 pursuant to

6    California Penal Code section 496, plus costs of suit, attorney fees, interest and

7    punitive damages.

8

9        WHEREFORE, Plaintiff prays that the Court enter a judgment against

10   Defendants as follows:

11       (1)    For an order determining that Plaintiff's claims against Defendants are

12   non-dischargeable pursuant to 11 U.S.C. §§ 523 (a) (2), (4) and (6) in the amount

13   of $285,335.38, plus interest thereon at the maximum allowable rate;

14       (2)    Any additional sum as yet unknown, but according to proof;

15       (3)    For treble damages pursuant to California Penal Code § 496(c) in an

16   amount no less than $856,006.14;

17       (4)    For punitive damages;

18       (5)    For attorneys' fees incurred herein;

19       (6)    For costs of suit incurred herein; and

20       (7)    For such other and further relief as the Court may deem just and

21   proper.

22       Respectfully submitted,

23   Dated:  November 30, 2023    LAGERLOF, LLP

24

25       By: /s/ Matthew J. Pero

26       Matthew J. Pero
         Attorneys for Plaintiff

27       I.C.A.R.E. DOG RESCUE, a California
         Nonprofit Public Benefit Corporation

28

ADVERSARY COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT
4867-8347-7396, V. 1

# EXHIBIT 1

Electronically Filed by Superior Court of California, County of Orange, 05/31/2023 07:38:02 PM.
30-2023-01328472-CU-FR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By T. Merck, Deputy Clerk.
Case 8:25-ap-01140-SC   Doc 22-2   Filed 06/13/25   Entered 06/13/25 16:04:41   Desc
Main Document      Page 11 of 25

Mark T. Flewelling (SBN 96465)
  mflewelling@lagerlof.com
Michael Rapkine (SBN 222811)
  mrapkine@lagerlof.com
LAGERLOF, LLP
155 N. Lake Avenue, 11th Floor
Pasadena, California 91101
Telephone: (626) 793-9400
Facsimile: (626) 793-5900

Attorneys for Plaintiff
I.C.A.R.E. DOG RESCUE,
a California Nonprofit Public
Benefit Corporation

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| I.C.A.R.E. DOG RESCUE, a California Nonprofit Public Benefit Corporation,<br><br>       Plaintiff,<br><br>      v.<br><br>DANIEL BRAVO, an individual; CORRIE BRAVO, an individual; and DOES 1 through 50, inclusive,<br><br>       Defendants. | Case No.: 30-2023-01328472-CU-FR-CJC<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Fiduciary Duty<br>2. Fraudulent Concealment<br>3. Unjust Enrichment<br>4. Money Had and Received<br>5. Violation of Penal Code Section 496<br>6. Accounting<br><br>Assigned for all purposes to<br><br>Judge John C. Gastelum |

Plaintiff alleges:

1.      Plaintiff I.C.A.R.E. DOG RESCUE ("ICARE" or "plaintiff") is, and at all times mentioned in this complaint was, a nonprofit public benefit corporation organized and existing under the laws of California, with its principal office in Corona, California.

2.      Defendant DANIEL BRAVO is an individual who resides in Orange County, California, and who is the former chair of ICARE's Board of Directors.  Upon information and belief, Daniel Bravo also held various officer roles during his tenure at ICARE.

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

3.      Defendant CORRIE BRAVO is an individual who resides in Orange County, California, is the former vice-chair of ICARE's Board of Directors, and is also the former Corporate Secretary of ICARE.

4.      The true names and capacities, whether individual, corporate, associate, partnership, or otherwise of DOES 1 through 50, inclusive, are presently unknown to plaintiff, and therefore plaintiff sues these defendants by such fictitious names pursuant to C.C.P. Section 474. When their true names and capacities are ascertained, plaintiff will amend the complaint accordingly.

5.      At all times mentioned in this complaint, defendants Daniel Bravo and Corrie Bravo (collectively, the "Bravos" or "defendants") were married to each other.  On information and belief, plaintiff alleges that Doe defendants 1-50 were agents, employees, independent contractors, or co-conspirators with one or both of the Bravos and/or each other, were at all times acting within the course and scope of such agency, employment and/or conspiracy, and are responsible in some manner for the conduct alleged below and for the damages sustained by plaintiff.

6.      Venue is proper in the above-entitled court because most of the conduct alleged below occurred in Orange County and the two known defendants reside in Orange County.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendant Daniel Bravo, Defendant Corrie Bravo and Does 1-50)

7.      Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though set forth in full.

8.      Founded in 2011, plaintiff ICARE's mission is to rescue dogs that are at risk of being euthanized, as well as dogs that are abandoned, abused, or no longer wanted by their families.  ICARE rescues these dogs by paying the necessary shelter fees, providing necessary veterinary care, finding suitable foster homes, and ultimately placing the dogs for adoption in loving, permanent homes.  ICARE also educates the public by providing information on canine rescue procedures and various canine breeds.

9.      Plaintiff carries out its mission through the work of dedicated volunteers and contributions from generous donors.

10.      Along with three other initial board members, defendants joined ICARE's Board of Directors in 2011. Defendant Daniel Bravo was named chair of the Board and defendant Corrie Bravo was named vice-chair of the Board. Defendant Corrie Bravo also served as ICARE's Corporate Secretary.  As with all ICARE Board members and officers, defendants agreed to serve without compensation.

11.      In their respective roles at ICARE, the Bravos had sole custody of ICARE's books and records. Having custody of the books and records included exclusive access to a desktop version of QuickBooks with a "direct bank feed feature", which enabled the Bravos to download account transactions reflected in deposit accounts and to modify or delete transactions in QuickBooks.

12.      The Bravos also gained exclusive control over ICARE's bank accounts, including two U.S. Bank deposit accounts ending with #...4364 and #5361, as well as the numerous VISA debit cards connected to those accounts. The deposit accounts were opened to hold contributions from donors, to pay ICARE expenses such as veterinary fees, dog adoption fees, dog food, supplies for rescued dogs, and to provide for ICARE literature and presentations.  Donations to ICARE minimized the need to incur expenses for dog food and supplies.

13.      Annually, defendant Daniel Bravo provided ICARE's outside certified public accountant with copies of its balance sheet, profit and loss statement, and general ledger.  The CPA would in turn use these financials to prepare and file ICARE's annual information returns. (Form 990.)

14.      In February 2022, ICARE discovered that the Bravos had failed to adhere to recordkeeping and reporting formalities.  As a consequence, the Bravos immediately resigned from their ICARE positions.

15.      On February 13, 2022, ICARE's new Board chair sent the Bravos a memo requesting ICARE records that were missing: "We are requesting all internal hard copy document[s] be dropped or mailed to myself, or Katie or Michelle, by Friday [February] 18,

Lagerlof, LLP
155 N. Lake Ave., 11ᵀᴴ Floor
Pasadena, CA 91101

2022. This includes all passwords/logins, keys and all items that are the property of the organization." The memo also advised the Bravos that "[t]he board will be using the current bank account[s]" at U.S. Bank.  A true and correct copy of this memo is attached to the complaint as Exhibit 1.

16.     On February 16, 2022, defendant Daniel Bravo replied to the memo by stating that U.S. Bank supposedly required extensive documentation and an in-person meeting before ICARE's new Board members and officers could access the U.S. Bank deposit accounts.  As an alternative option, Mr. Bravo suggested that ICARE's new Board should open new accounts at U.S. Bank or another financial institution.  Mr. Bravo added that: "The second option (and probably the quickest) is to open up a separate account in U.S. BANK or another bank… [w]e can then transfer all the remaining funds over to your new account."  Mr. Bravo also commented that because he and Corrie Bravo "were the board members on record for 2021, it makes more sense to us that we complete [ICARE's] taxes."

17.     ICARE's new Board voted on and rejected defendants' proposals to open new deposit accounts and to allow defendants to coordinate with ICARE's CPA to prepare and file the 2021 tax returns.

18.     After extensive follow up and considerable time and effort, ICARE's new Board managed to gain access to the U.S. Bank deposit accounts as well as monthly account statements for the period from March 2015 through February 2022.

19.     ICARE's new Board had similar difficulty obtaining access to the QuickBooks account.  On March 12, 2022, ICARE's new Board chair requested the login information for the QuickBooks cloud account.  Daniel Bravo responded that he had no access to a cloud account.

20.     The Bravos continued their efforts to prevent ICARE from gaining access to its books and records, stalling the release of the QuickBooks login and password information, and withholding data files relating to ICARE finances.  On April 22, 2022, for example, defendant Daniel Bravo wrote: "My company [Telarus] purged and replaced my laptop as part of their four year IT cycle of recouping old IT equipment. So I no longer have any information regarding ICARE Dog Rescue financials."  A true and correct copy of this email is attached as Exhibit 2.

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

4

21.     On April 25, 2022, ICARE's new Board was finally able to access the QuickBooks account and obtain ICARE's balance sheet, general ledger, and profit and loss statements for the period from January 1, 2021 through December 31, 2021.

22.     After reviewing the account statements, the QuickBooks data, and the financial documents it was able to access, ICARE retained a forensic accountant / certified fraud examiner as a consultant to analyze all available financial information, to ascertain what documents were still missing, and to perform a forensic analysis of ICARE's books and records.

23.     From that analysis, which was limited by ICARE's inability to obtain numerous receipts and other requested documents, ICARE learned the following:

a.     The Bravos used the ICARE debit cards to pay for what appears to be their personal expenses such as jewelry, online music downloads, online video games, hotel bookings, supermarket purchases, countless restaurant meals, as well as unexplained and undocumented purchases from vendors such as Amazon, Costco, Circle K, and additional retailers.  Many debit card charges were not recorded in ICARE's general ledger.  Other charges in the general ledger were modified or deleted by defendants using ICARE's desktop version of QuickBooks.

b.     The Bravos frequently withdrew cash from ATMs using the ICARE debit cards. However, the Bravos failed to identify the ICARE expenses that were paid through these cash withdrawals, and they failed to record most of these debits in ICARE's general ledger.

24.     Plaintiff is still in the process of gathering information and documents that defendants have continued to withhold so that it can quantify the total amount of ICARE funds that defendants misappropriated.  On information and belief, plaintiff alleges that at a minimum, the Bravos have misappropriated not less than $285,335.38 in ICARE funds to pay for what appears to be their personal expenses from March 2015 through February 2022.

25.     Of the $285,335.38 in funds that appear to have been misappropriated, the following table describes the top five categories of questionable transactions during the period between March 2015 through February 2022:

///

///

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

| Category | Number of Transactions | Amount |
|---|---|---|
| Food & beverages | 511 | $37,5471.73 |
| Convenience store / Gas station | 788 | $35,272.08 |
| Cash withdrawals | 146 | $32,209.37 |
| Cell phone charges | 94 | $20,700.57 |
| Members stores | 91 | $18,453.54 |

26.    To date, plaintiff has only been able to obtain statements from U.S. Bank going back to March 2015.  The alleged amount misappropriated by defendants could easily exceed $285,335.38 once bank statements prior to March 2015 are obtained.

27.    On September 20, 2022, plaintiff sent the Bravos a demand that they produce various supporting documentation, including receipts, so that plaintiff could evaluate the legitimacy of the questionable transactions listed in the above table.  To date, defendants have refused to produce any supporting documentation (including receipts) for ICARE's review.

28.    As ICARE Board members and officers, the Bravos were entrusted with ICARE's money, bank records, accounting records, and other financial documents.  Defendants held ICARE's money in trust --to be used strictly for ICARE business expenses-- and thus there was a fiduciary relationship between ICARE and defendants that included an obligation to safeguard and protect ICARE's property.  The fiduciary duty owed by the Bravos obligated them to place ICARE's interests ahead of their own.  The fiduciary duty owed by the Bravos also tolls all applicable statute of limitations periods in this action.

29.    Defendants breached their fiduciary duties by diverting ICARE funds to pay for their personal expenses.

30.    Defendants were not acting under any grant of authority or consent when they diverted ICARE funds to pay for their personal expenses.

31.    Plaintiff's damages are not less than $285,335.38 from March 2015 through February 2022, subject to proof at trial.

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

32.     The acts and omissions of defendants were done with a conscious disregard for plaintiff's rights and with a specific intent to defraud and injure plaintiff, which constitutes fraud, oppression, and malice under California Civil Code section 3294.  By virtue of defendants' willful and wrongful conduct, plaintiff is therefore entitled to recover punitive damages in an amount sufficient to deter the defendants from similar conduct in the future.

## SECOND CAUSE OF ACTION

### Fraudulent Concealment

### (Against Defendant Daniel Bravo, Defendant Corrie Bravo, and Does 1-50)

33.     Plaintiff reincorporates the allegations from paragraphs 1 through 32, as though set forth in full.

34.     As former ICARE Board members and officers, the Bravos had a duty to disclose, but failed to disclose, material facts to plaintiff concerning their use of ICARE funds to pay their own personal expenses.  The Bravos likewise had a duty to disclose, but failed to disclose, their practice of: (i) modifying or deleting transactions in QuickBooks; and (ii) failing to record transactions in the general ledger.

35.     Due to the urgent need to file the 2021 information return for ICARE, the current Board expended considerable time and effort to obtain the financial information from the Bravos. On April 22, 2022, Daniel Bravo made the following representation to the current chairperson of the Board: "I no longer have any information regarding ICARE Dog Rescue financials." (*see* Exhibit 2.)  However, three days later, Mr. Bravo provided ICARE's balance sheet, general ledger, and profit and loss statement, with a comment that: "these are the files you need for the 2021 taxes."  Upon conducting a forensic analysis of these records, ICARE learned that numerous transactions were missing from the balance sheet, general ledger, and profit/loss statement.  ICARE realized that items were missing by comparing these financial documents to the U.S. Bank statements.

36.     On November 29, 2022, Daniel Bravo addressed the missing accounting data with the following lackluster explanation: "Transactions were excluded that could not be properly categorized."  The Bravos failed to inform the current Board that the accounting data furnished

Lagerlof, LLP
155 N. Lake Ave., 11ᵗʰ Floor
Pasadena, CA 91101

1    to ICARE in April 2022 was incomplete.

2        37.    The defendants' practice of modifying or deleting transactions in QuickBooks,

3    and failing to record transactions in the general ledger, meant that the financials furnished on an

4    annual basis to ICARE's CPA (i.e., the general ledger, balance sheet, and profit/loss statement)

5    were purposefully manipulated by defendants.  The defendants' manipulation of the financials

6    concealed the misappropriation of funds and ICARE relied on these fraudulently concealed facts

7    to its detriment.  Due to this active concealment and the fiduciary duties owed by the Bravos,

8    ICARE is entitled to equitable tolling of the applicable statute of limitations periods in this

9    action.

10        38.    As a direct consequence of defendants' use of ICARE funds for their personal

11    expenses and defendants' active concealment of this misconduct, ICARE is entitled to damages

12    of not less than $285,335.38 for funds misappropriated between March 2015 and February 2022.

13    This damages figure is a "low end" estimate and may be revised pending the defendants'

14    complete production of financial records and subject to proof at trial.

15        39.    The acts and omissions of defendants were done with a conscious disregard for

16    plaintiff's rights and with a specific intent to defraud and injure plaintiff, which constitutes fraud,

17    oppression, and malice under California Civil Code section 3294.  By virtue of defendants'

18    willful and wrongful conduct, plaintiff is therefore entitled to recover punitive damages in an

19    amount which shall be sufficient to deter the defendants from similar conduct in the future.

20                          **THIRD CAUSE OF ACTION**

21                              **Unjust Enrichment**

22        **(Against Defendant Daniel Bravo, Defendant Corrie Bravo, and Does 1-50)**

23        40.    Plaintiff reincorporates the allegations in paragraphs 1 through 39 as though fully

24    stated herein.

25        41.    Defendants received an unjust benefit through their misappropriation and use of

26    ICARE funds to pay their personal expenses.

27        42.    Defendants have knowledge of the benefits of the ill-gotten gains they received,

28    yet they continue to retain the misappropriated funds without justly compensating plaintiff.

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

43.     Under principles of equity and good conscience, defendants should not be permitted to retain such benefits which they have acquired by virtue of their inequitable conduct.

44.     Plaintiff is entitled to restitution in the amount of the total funds that were misappropriated by the defendants, which is not less than $285,335.38 for activity from March 2015 through February 2022.  If defendants are allowed to retain these funds, they would be unjustly enriched at plaintiff's expense.

## FOURTH CAUSE OF ACTION

### Money Had And Received

### (Against Defendant Daniel Bravo, Defendant Corrie Bravo, and Does 1-50)

45.     Plaintiff reincorporates the allegations from paragraphs 1 through 44 as though set forth in full.

46.     Due to defendants' misappropriation of ICARE funds for their own personal use, defendants received money and property that was intended to be used for the benefit of plaintiff.

47.     Despite ICARE's demands, the defendants have not returned any of the misappropriated funds to plaintiff.

48.     Defendants have wrongfully obtained funds from plaintiff that, in good conscience and equity, belongs to plaintiff and should have been utilized to fulfill its mission of rescuing abandoned dogs.

49.     Plaintiff is entitled to damages in an amount of not less than $285,335.38 for funds misappropriated between March 2015 and February 2022.  The commencement of discovery in this action may uncover additional documentation which demonstrates that plaintiff's compensatory damages are greater than $285,335.38.

## FIFTH CAUSE OF ACTION

### Violation of Cal. Penal Code Section 496

### (Against Defendant Daniel Bravo, Defendant Corrie Bravo, and Does 1-50)

50.     Plaintiff realleges and incorporates paragraphs 1 through 49 herein.

51.     Any person who knowingly receives property obtained by theft violates California Penal Code Section 496(a).  Pursuant to Section 496(c), a party injured due to a violation of

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

1  Section 496(a) may bring a civil action against the person(s) that violated this statute, seeking

2  recovery of treble damages, costs of suit, and attorneys' fees.

3      52.    Defendants Daniel Bravo and Corrie Bravo wrongfully obtained property from

4  plaintiff through frequent debit card charges and ATM withdrawals.  With respect to the debit

5  card purchases, the Bravos wrongfully received and retained personal property through each of

6  these charges.  Rather than using the debit cards for ICARE-related business, the charges were

7  made to benefit the Bravo marital estate. The Bravos knew that they had no right to receive and

8  retain this stolen property using ICARE funds.

9      53.    As for the frequent ATM withdrawals by the Bravos using the ICARE debit cards,

10  each transaction likewise constituted a separate act of receiving property through theft.

11  Defendants knew the ICARE funds were intended solely for ICARE expenses rather than for

12  their personal use.  Despite this fact, the Bravos took the wrongfully obtained money and

13  commingled these funds into their joint personal bank accounts.

14      54.    Plaintiff prays for judgment against defendants for treble damages of not less than

15  $856,006.14, for the funds misappropriated between March 2015 and February 2022.  This

16  figure is subject to revision based on items uncovered in discovery and subject to proof at trial.

17      55.    Pursuant to Penal Code section 496(c), plaintiff is also entitled to its attorneys'

18  fees and costs.

19                    **SIXTH CAUSE OF ACTION**

20                          **Accounting**

21      **(Against Defendant Daniel Bravo, Defendant Corrie Bravo, and Does 1-50)**

22      56.    Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as

23  though set forth in full.

24      57.    Defendants, in their former capacity as ICARE officers and Board members, had

25  a fiduciary duty to ICARE.  Defendants violated this fiduciary duty by engaging in the

26  misappropriation of ICARE funds as alleged above.

27      58.    Plaintiff is entitled to an order requiring a full accounting of all personal expenses

28  paid with ICARE funds along with the production of all withheld documents.

LAGERLOF, LLP
155 N. LAKE AVE., 11TH FLOOR
PASADENA, CA 91101

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and the following specific relief against the defendants:

ON THE FIRST AND SECOND CAUSES OF ACTION

1.      For damages of not less than $285,335.38;

2.      For punitive damages;

ON THE THIRD AND FOURTH CAUSES OF ACTION

3.      For damages of not less than $285,335.38;

ON THE FIFTH CAUSE OF ACTION;

4.      For actual damages of not less than $285,335.38;

5.      For treble damages of not less than $856,006.14;

6.      For attorneys' fees and costs pursuant to Penal Code section 496(c);

ON THE SIXTH CAUSE OF ACTION

7.      For an accounting of all expenses paid from 2011 through February 2022;

ON ALL CAUSES OF ACTION;

8.      For interest at the highest rate allowed by law;

9.      For costs of suit incurred herein; *and*

10.     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: May 31, 2023                      LAGERLOF, LLP

By: _____
                                         Michael Rapkine
                                         Attorneys for Plaintiff
                                         I.C.A.R.E. DOG RESCUE,
                                         a California Nonprofit Public Benefit Corporation

# EXHIBIT 1

# MEMO

**TO:**        DAN BRAVO AND CORRIE BRAVO

**FROM:**     MARTA R. ESCANUELAS, KATIE ROGEN AND MICHELLE RANGEL

**SUBJECT:**  REORGANIZATION OF ICARE BOARD OF DIRECTORS

**DATE:**     FEBRUARY 13, 2022

The new board of directors have met and elected new officers. For your information the new officers are:

Marta R. Escañuelas, MBA-President
Katie Rongen, Secretary
Michelle Rangel, Treasurer

We do have a few questions and some information to communicate.

Are you going to announce your retirement or would like us to do so? If you are going to announce, when will you announce this?

If we make the announcement, we will convey a positive message that includes recognition of your past contributions. As stated before, we have no desire to create an uncomfortable situation in which the dogs will lose our focus.

We are requesting all internal hard copy documentations be dropped or mailed to myself, or Katie or Michelle, by Friday 18, 2022. This includes all passwords/logins, keys and all items that are the property of the organization. The board will be using the current bank account. We expect the Best Friends grant check on 2/14 or 15 and Corrie has agreed to deposit that check into the current bank account.

We will also contact the current CPA and insurance broker to inform them that the board has changed, you may also want to give them a call as well.

Again, thank you for past courtesies and we wish you all well.

# EXHIBIT 2

RE: Information for 990 Tax Return

https://mail.aol.com/webmail-std/en-us/PrintMessage

**From:** dbravo@telarus.com,
**To:** martaesc1@verizon.net,
**Cc:** corriebravo@yahoo.com,
**Subject:** RE: Information for 990 Tax Return
**Date:** Fri, Apr 22, 2022 7:17 pm
**Attachments:**

Hi Marta,

My company purged and replaced my laptop as part of their four year IT cycle of recouping old IT equipment. So I no longer have any information regarding ICARE Dog Rescue financials. I believe that Anette may have completed the taxes for 2021, let me ask her. There are two options here. If Anette completed the taxes, I can ask her to proceed in submitting them. I will need to sign off on them. If Anette no longer has that information, because I did tell her to stop work on it in February, I can get you the three files I send her for tax preparation, but I will have to dig around for them in old emails as I no longer have that data on my local machine.

If we have to go the route of the second option, you will need to have your CPA file an extension because I don't believe your CPA would have time to get them completed and submitted by the deadline. I should have more information on Monday. Let me know what option you would prefer. I believe option 1 would be your best option as then you won't have to file an extension and do the work, you would only need to pay Anette for the work that she did.

Dan